## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE THE APPLICATION OF MONSY GUERRA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-20-96-SLP |
| JEREMIAS FIGEUROA RODAS, | ) ) | |
| Defendant. | ) | |

## **O R D E R**

Plaintiff, Monsy Guerra Guerra, a citizen of Guatemala and currently residing there, filed a Verified Complaint seeking a court order for the return of her four-year-old son, F.E.R.G., pursuant to the Convention on the Civil Aspects of International Child Abduction (the Hague Convention or Convention), Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 (Treaty Doc.) and the International Child Abduction Remedies Act (ICARA).[1] Plaintiff alleges that Defendant, Jeremias Figeuroa Rodas (Rodas), the biological father of F.E.R.G., wrongfully removed F.E.R.G. from his "habitual residence" of Guatemala and

---

[1] The Hague Convention has been implemented in the United States by the ICARA, 22 U.S.C. §§ 9001 et seq. (formerly 42 U.S.C. §§ 11601-11610). Both the United States and Guatemala are signatories to the Hague Convention. *See* Hague Conference on Private Int'l Law, Convention of 25 Oct. 1980 on the Civil Aspects of Int'l Child Abduction, Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24.   ICARA defines the person seeking relief in the courts as the "petitioner" and the person "against whose interests the petition is filed as "respondent." *See* 42 U.S.C. § 11602(4) and (6).  When this action was commenced, Guerra Guerra captioned the case identifying herself as "Plaintiff" and Rodas as "Defendant."  The Court, therefore, has used these terms to identify the parties but they are intended to correspond to the definition of "petitioner" and "respondent" under ICARA.

brought him to the United States and, specifically, to Oklahoma City, Oklahoma, within the jurisdiction of this judicial district.

## I.      Relevant Background Facts

Guerra Guerra and Rodas previously lived together in Chimaltenango, Chimaltenango, Guatemala. They have never been married.

In 2015, they had a son, F.E.R.G., born in Chimaltenango, Chimaltenango, Guatemala.  F.E.R.G. lived in Guatemala for the first three years of his life.

On or about March 11, 2019 Rodas entered the United States with F.E.R.G. and several days later arrived in Oklahoma City, Oklahoma.  F.E.R.G. has remained in Oklahoma City since that time.[2]

On May 9, 2019, Guerra Guerra reported the fact of F.E.R.G.'s removal from Guatemala to Guatemalan authorities and on May 23, 2019, submitted a formal complaint. On June 4, 2019, Guerra Guerra submitted an application, pursuant to the Hague Convention, seeking the return of F.E.R.G.

## II.     Procedural History

On February 3, 2020, Guerra Guerra initiated this action and thereafter, on February 13, 2020, filed a motion requesting the Court to issue a temporary restraining order.  The Court set the matter for hearing on February 18, 2020 and the following day entered a temporary restraining order and set the matter for a hearing on the merits on February 27, 2020.

---

[2] Rodas represented that he and F.E.R.G. have pending applications for asylum.  No evidence regarding the asylum proceedings has been included in the record before the Court.

Guerra Guerra moved for a continuance of the hearing because she was having difficulty serving Rodas.  The Court granted a continuance and set the matter for hearing on March 13, 2020.

Guerra Guerra served Rodas on March 11, 2020, just two days prior to the scheduled hearing.  Rodas appeared at the hearing pro se and explained to the Court that he was attempting to find a lawyer to represent him.  The Court, without objection from Guerra Guerra, continued the hearing until April 3, 2020.  The Court also appointed Sharon Byers to serve as guardian ad litem for F.E.R.G.

At the April 3, 2020 hearing, Rodas informed the Court that he had not been successful in finding a lawyer to represent him.  The Court found appointment of counsel necessary and appointed Michael Whaley to represent Rodas.  Mr. Whaley requested a continuance of the hearing to allow him adequate time to prepare.  Guerra Guerra did not oppose the requested continuance and the Court, therefore, continued the matter to April 13, 2020.

In the interim, the Court conducted a telephonic status conference with the parties. The Court learned that extenuating circumstances related to the COVID-19 pandemic required a further continuance of the hearing.  By agreement of the parties, the Court continued the hearing to June 1, 2020.

At the June 1, 2020 hearing, Guerra Guerra appeared through her counsel of record, Gregory P. Beben and Rodas appeared through his counsel of record, Mr. Whaley and Matthew W. Brockman.  Sharon Byers appeared as guardian ad litem on behalf of F.E.R.G. Also present at the hearing were the court-appointed interpreter, Rita Lyons and Plaintiff's

3

interpreter, Luciana Perez.   The Court heard testimony of Guerra Guerra by video teleconference.[3]  Mr. Rodas testified in person as did Misael Rodas, his brother.  The Court also received into evidence exhibits submitted by both parties.

## III.   Discussion

The "core premise" of the Hague Convention is that "the interests of children . . . in matters relating to their custody are best served when custody decisions are made in the child's country of 'habitual residence.'"  *Monasky v. Taglieri*, 140 S.Ct. 719, 723 (2020) (internal quotations marks and citations omitted).   "To that end, the Convention ordinarily requires the prompt return of a child wrongfully removed or retained away from the country

---

[3] Prior to the hearing, the Court conditionally granted Guerra Guerra's unopposed motion requesting leave to appear remotely at the hearing. *See* Order [Doc. No. 42].  As the Court found, Guerra Guerra's indigency and extenuating circumstances surrounding the COVID-19 pandemic -- including travel restrictions and the need for imposition of safeguards related to the pandemic -- constitute "compelling circumstances" that warranted permitting Guerra Guerra to testify remotely. *See* Fed. R. Civ. P. 43(a) ("For good in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").  At the hearing, the Court ensured that appropriate safeguards were in place to include: proper identification of Guerra Guerra; the lack of any outside influence on her; and accurate transmission of her testimony. *See Gil-Leyva v. Leslie*, 780 F. App'x 580, 587-89 (10th Cir. 2019) (addressing Rule 43(a) requirements in context of Hague Convention hearing where magistrate judge allowed the plaintiff to testify remotely).  The Court notes that the transmission of Guerra Guerra's testimony was frequently interrupted and she had to change her location during the course of the proceeding due to transmission difficulties.  Defendant, however, raised no objection to her remote testimony and the Court otherwise undertook efforts to ensure proper attendant safeguards were in place.

in which she habitually resides." *Id*.[4]   "The Convention's return requirement is a 'provisional' remedy that fixes the forum for custody proceedings." *Id*.[5]

### A.      Plaintiff's Burden – Wrongful Removal or Retention

A removal or retention is wrongful "if done in violation of the custody laws of the child's habitual residence." *Id*.   Thus, a petitioner seeking relief under the Convention must show by a preponderance of the evidence that: (1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of the removal or the retention. *Takeshi Ogawa v. Kyong Kang*, 946 F.3d 1176, 1178-79 (10th Cir. 2020); *Watts v. Watts*, 935 F.3d 1138, 1143 (10th Cir. 2019).   A showing, by a "preponderance of the evidence" means that evidence, considered in light of all the facts, proves something that is more likely so than not. *Crane v. Merriman*, No. CIV-17-849-D, 2017 WL 4079406 at * 2 (W.D. Okla. Sept. 14, 2017) (citing *Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n. 9 (1997)).

---

[4] "The Hague Convention contemplates a judicial decision 'within six weeks from the date of commencement of the proceedings.'" *Gil-Leyva*, 780 F. App'x at 588 (quoting T.I.A.S. No. 11670, Art. 11).   The Court has been mindful of the six-week normal time for return-order decisions and has acted as expeditiously as possible, but delays accompanying Plaintiff's service of the Complaint, Rodas's need for appointment of counsel and, most recently and impactfully, issues arising from the COVID-19 pandemic have inevitably extended that six-week optimal dispositional time frame.

[5] As the Tenth Circuit has explained, a court's "inquiry under the Hague Convention is limited to the merits of the abduction claim" and "the merits of the underlying dispute related to custody of [the child]" are not at issue. *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002) (internal quotation and citations omitted).

At the hearing, Defendant conceded that Plaintiff established all three elements of her prima facie case. Furthermore, the Court independently concludes Guerra Guerra has established by a preponderance of the evidence that: (1) F.E.R.G. was a habitual resident of Guatemala at the time of his removal or retention[6]; (2) F.E.R.G.'s removal or retention was done in breach of Guerra Guerra's rights of custody[7]; and (3) that Guerra Guerra was exercising her parental rights at the time of F.E.R.G.'s wrongful removal or retention.[8] Therefore, the Court must order F.E.R.G.'s return to Guatemala. Rodas, however, attempts to invoke certain exceptions or defenses to the F.E.R.G.'s return as set forth in the Convention and the Court, therefore, must addresses whether Rodas has satisfied his evidentiary burden.

---

[6] As the Supreme Court has observed, "[c]ommon sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." *Monasky*, 140 S.Ct. at 727.

[7] The Court received into evidence Article 261 of Guatemala's Civil Law, Chapter VII, Parental Authority. *See* Pl.'s Ex. 9 at 2. The Convention permits the Court to take judicial notice of the applicable Guatemalan law. *See* Treaty Doc., Art. 14; *see also Nixon v. Nixon*, 862 F. Supp.2d 1168, 1177 (D. N.M. 2011) (taking judicial notice of "Australia's Family Law Act of 1975" as permitted by the Convention). The Eleventh Circuit has specifically addressed Article 261 and concluded that it grants the requisite custodial rights for purposes of the Hague Convention. *See, e.g., Ovalle v. Perez*, 681 F. App'x 777, 784-86 (11th Cir. 2017); *see also Palencia v. Perez*, 921 F.3d 1333 (11th Cir. 2019).

[8] As courts have found, "a parent with *de jure* custody rights" exercises those rights whenever he or she attempts to keep any sort of regular contact with the child and a "person cannot fail to exercise those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Mertens v. Kleinsorge-Mertens*, 157 F. Supp.3d 1092, 1104 (D. N.M. 2015) (internal quotation marks and citations omitted). No evidence of any such abandonment was presented.

6

## B.     Rodas's Defenses

Rodas attempts to invoke two defenses available under the Convention.  First, Rodas asserts consent as an affirmative defense.  He argues that F.E.R.G.'s removal or retention was not wrongful because Guerra Guerra consented to F.E.R.G.'s removal from Guatemala and travel to the United States.  Rodas further maintains that Guerra Guerra consented to F.E.R.G.'s retention in the United States.  Second, Rodas argues returning F.E.R.G. to Guatemala would expose F.E.R.G. to a grave risk of physical or psychological harm.

### 1.     Consent

The Convention provides as a defense to the return of a child, that the person having custody of the child "had consented to or subsequently acquiesced in the removal or retention[.]"  Treaty Doc., Art. 13(a).  Rodas must establish this defense by a preponderance of the evidence.  *See* 22 U.S.C. § 9003(e)(2)(B).

Consent is to be analyzed distinctly from acquiescence although both "turn[] on the petitioning parent's subjective intent."  *Warren v. Ryan*, No. 15-cv-00667-MSK-MJW, 2015 WL 3542681 at * 2 (D. Colo. June 5, 2015).  As the court explained in *Warren*:

> The question of consent focuses on what the petitioning parent understood and agreed to, usually before the children left their habitual residence. The inquiry requires an examination into what the petitioner contemplated, agreed to, the nature and scope of the petitioner's consent, and any conditions or limitations placed on the consent. A parent's consent to his or [sic] child's travel does not necessarily constitute consent to retention under the Convention.
> In contrast, acquiescence addresses the petitioning parent's state of mind after the children have traveled from their habitual residence, usually concerning the removing parent's retention. Generally, proof of acquiescence requires a showing of a formal act such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time.

*Id.*, 2015 WL 3542681 at *2-3 (internal quotation marks and citation omitted).

Rodas testified that Guerra Guerra, together with her entire family, consented to F.E.R.G.'s removal from Guatemala.  Rodas testified that when he and F.E.R.G. were detained at the United States' border, they contacted Guerra Guerra and she confirmed that Rodas was the father of F.E.R.G. and that she had authorized him to bring F.E.R.G. to the United States.  According to Rodas, Guerra Guerra agreed to F.E.R.G. remaining with Rodas in the United States for a period of three years.[9]

Rodas also testified that Guerra Guerra initially planned to join him in the United States.  But after he had been in the United States for about eight months, he found out Guerra Guerra had started a relationship with a new boyfriend and would not be coming.

Guerra Guerra testified that she knew Rodas was taking F.E.R.G. to the United States but that F.E.R.G. would return prior to May 20, 2019, his birthday. She testified that she did not ever intend for F.E.R.G. to move to the United States and that she has never told Rodas F.E.R.G. could stay in the United States.  As set forth above, she first reported F.E.R.G.'s removal to Guatemalan authorities in May 2019.

The Court finds Rodas has not established, by a preponderance of the evidence, that Guerra Guerra consented to F.E.R.G. living in the United States for

---

[9] Rodas' brother, Misael Rodas, similarly testified that he was present with Guerra Guerra and Rodas in Guatemala when Guerra Guerra agreed that F.E.R.G. should remain in the United States for a period of three years.

a period of three years.  The parties gave conflicting testimony on this point.  But almost immediately after F.E.R.G. left Guatemala, Guerra Guerra reported his removal to authorities in Guatemala.  And, soon thereafter, she began to pursue her rights under the Hague Convention.  Her conduct is inconsistent with any three-year agreement that F.E.R.G. live in the United States.  This conclusion is further compelled by the fact that Rodas entered the United States illegally and, therefore, whether he could remain with F.E.R.G. in the United States for a period of three years is wholly speculative.  The Court concludes, at most, Guerra Guerra consented to F.E.R.G.'s short-term travel to the United States, but not his retention there.[10]

### 2.     Grave Risk of Harm

Rodas further contends that returning F.E.R.G. to Guatemala would expose F.E.R.G. to a grave risk of physical or psychological harm.  *See Monasky*, 140 S.Ct. at 723 ("The Convention recognizes certain exceptions to the return obligation.  Prime among them, a child's return is not in order if the return would place her at a "grave risk" of harm or otherwise in an "intolerable situation." (citing Convention, Art. 13(b)).[11]   Rodas must make this showing by clear and convincing evidence.  *See* 22 U.S.C. § 9003(e)(2)(A).

---

[10] As set forth, consent and acquiescence are distinct issues.  Rodas did not raise the issue of acquiescence as an affirmative defense and did not present any evidence that Guerra Guerra acquiesced to F.E.R.G.'s retention in the United States.

[11] Article 13(b) provides, in pertinent part, that "the judicial or administrative authority of the requested State is not bound to order the return of the child if the person . . . [who] opposes its return establishes that . . . there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  Treaty Doc., Art. 13(b).

As the Tenth Circuit has held, "'grave risk' means the potential harm to the child must be severe, and the level of risk and danger . . . very high." *West v. Dobrev*, 735 F.3d 921, 932 (10th Cir. 2013); *see also Nixon*, 862 F. Supp.2d at 1179 ("[T]he State Department has made clear that the grave harm exception was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests." (internal quotation marks and citation omitted)).

Where grave risk is premised on allegations of abuse or neglect, the evidence must demonstrate a "sustained pattern of physical abuse." *Warren*, 2015 WL 3542681 at * 4 (citation omitted). "Sporadic or isolated incidents" are insufficient. *Id.* The Tenth Circuit's decision in *Gil-Leyva* underscores how narrow the grave risk defense is to be construed and the level of severity that must exist for the circumstances to give rise to a grave risk. In *Gil-Leyva*, the absconding mother claimed the plaintiff had physically abused their two children. She testified the plaintiff had spanked the child H.F.G. "only once" but had spanked H.M.G. six times and had left marks on the "bare bottoms" of both children. She also testified that the plaintiff would occasionally get angry and throw things around. Additionally, the mother testified about the plaintiff's negligence in caring for the children, including his conduct in leaving prescription medications within reach of the children, the manic effects of his prescription medications, the plaintiff's failure to change the children's diapers, an occasion where plaintiff's narcotic-induced sleep left him completely unaware of the needs of the children, dangerous items left around the house such as power tools and screws, nails, choking hazards, solvents and glues that posed serious danger to the children and noxious and uninhabitable fumes in the home due to

plaintiff cooking solvents, pennies and vehicle parts.  The Tenth Circuit deemed these living conditions to be "matters for child-custody proceedings" and found they did not rise to the level of clear and convincing evidence of a grave risk of harm under the Convention. *Id*. at 592.

Rodas attempts to satisfy the grave risk defense focusing on alleged physical or psychological abuse of F.E.R.G. by Guerra Guerra.  He testified that when Guerra Guerra would drink, she would hit F.E.R.G., pull his ears and pull his hair.  He testified Guerra Guerra drank every Saturday and that she was more aggressive towards F.E.R.G. when she drank.  Rodas testified she never left marks on F.E.R.G. but gave him bad memories.   He also provided some testimony that Guerra Guerra's friends were in gangs and that his son would not be safe around them.

Rodas did not provide much detail regarding the instances in which Guerra Guerra allegedly physically abused F.E.R.G. or how often the abuse (as opposed to Guerra Guerra's drinking) occurred.  He acknowledged she never left any marks on F.E.R.G. When comparing the circumstances presented to those at issue in *Gil-Leyva*, the Court finds Rodas's testimony fails to demonstrate by clear and convincing evidence a grave risk of harm to F.E.R.G.

Rodas also referenced "disease" in the area of Guatemala in which he lived and testified there was leprosy and pneumonia.  He testified his father was sick with pneumonia, but did not state when his father suffered from this ailment.  He also testified that a neighbor passed away because her lungs were completely blocked.  Again, no time frame was provided.  Nor did Rodas offer any additional facts to demonstrate how F.E.R.G.

was at any risk of harm based on this alleged disease or even to show that the disease was widespread.  Moreover, Guerra Guerra testified that she took F.E.R.G. to the doctor and submitted records regarding his healthcare.  Rodas's testimony regarding disease is insufficient to demonstrate a grave risk of harm.

As to gang violence, Rodas broadly testified that there exists a lot of crime and violence in Guatemala and that Rodas was always fearful for his life when he went to work as a bus assistant.  He did not describe the reasons supporting this assertion.  Moreover, his testimony wholly failed to address any crime or violence directly impacting F.E.R.G. Rodas's expressed concerns about general regional violence is insufficient.  *Silverman v. Silverman*, 338 F.3d 886, 901 (8th Cir. 2003); *see also Salguero v. Argueta*, 256 F. Supp.3d 630, 640-41 & n. 16 (E.D. N.C. 2017) (gang activity and threats failed to establish circumstances in El Salvador constituted a "zone of war" or that child was in specific danger living in El Salvador warranting application of the grave risk defense (citing *Silverman*, 338 F.3d at 901); *Delgado v. Osuna*, No. 4:15-CV-00360-CAN, 2015 WL 5095231 at *14 (E.D. Tex. Aug. 28, 2015) (respondent did not show by clear and convincing evidence grave risk of harm based on purported threats directed to respondent's uncle and father to "stop messing with the government" and noting that threats were not specifically directed against children). [12]

---

[12] To the extent Rodas made fleeting reference to the fact that Guerra Guerra does not hold a job and/or that monetary issues are at play, such economic circumstances are insufficient to meet the grave risk standard. *See, e.g., Nixon*, 862 F. Supp.2d at 1180 (addressing grave risk defense and stating: "courts routinely have held that financial concerns are insufficient to establish an 'intolerable situation'"); *see also In re Application of Stead v. Menduno*, No. 14-cv-01400-PAB-KMT, 2014 WL 6819547 at *3 (D. Colo. Dec. 3, 2014) ("[T]he parties' finances and familial

In sum, the Court finds the evidence presented by Rodas is insufficient to demonstrate by clear and convincing evidence that F.E.R.G. would be subjected to a grave risk of harm if he were returned to Guatemala.

### C.     Remedy

The Convention provides that "[w]here a child has been wrongfully removed . . . the [court] shall order the return of the child forthwith."  Treaty Doc., Art. 12.  "[T]he remedy for a wrongful removal is simply to restore the child[] to the jurisdiction of [his] place of habitual residence, and that jurisdiction shall then decide how to apportion custody among the parents."  *Warren*, 2015 WL 3542681 at *7.

Here, the Court must further address an obstacle that exists to the effective ordering of F.E.R.G.'s return due to the unique circumstances affecting this case as a result of the COVID-19 pandemic.  In particular, the parties have represented to the Court that currently there is a ban on travel to and from Guatemala. The Court has addressed this issue  with the parties and that parties have agreed to a stay of the return of F.E.R.G. as ordered, until the travel ban is lifted and international travel is no longer deemed unsafe due to the pandemic.[13]  Notwithstanding these circumstances, the parties are directed to be mindful

---

circumstances . . . are irrelevant to the Court's determination of whether relocation poses a grave risk of harm to A.C.S[;] . . . the State Department's analysis of the grave risk exception specifically forecloses consideration of the parties' financial situation upon relocation" (citations omitted)).

[13] At least one other court has addressed similar difficulties in effecting the return of a child to his habitual residence as required by the Hague Convention due to travel restrictions arising from the COVID-19 pandemic. *See Gallegos v. Garcia Soto*, Case No. 1:20-CV-92-RP, 2020 WL 2086554, (W.D. Tex. Apr. 30, 2020).

of the requirements of the Convention that F.E.R.G.'s return be "prompt."  *See Monasky*, 140 S.Ct. at 723 ("[T]he Convention ordinarily requires the prompt returned of a child wrongfully removed or retained away from the country in which she habitually resides); *see also* Treaty Doc., Art. 11 ("The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.").  Accordingly, the parties are to provide status updates to the Court regarding F.E.R.G.'s ability to safely travel to Guatemala.

## IV.   Conclusion

IT IS THEREFORED ORDERED that Plaintiff Monsy Guerra Guerra's Verified Complaint for Return of Child Pursuant to Hague Convention is GRANTED and the Court directs that F.E.R.G. be returned to Guatemala.  This Order is for return only.  No substantive custody decision has been rendered.

IT IS FURTHER ORDERED that the return of F.E.R.G. is STAYED pending the parties' advisement to the Court that F.E.R.G. can travel safely to Guatemala and that circumstances surrounding the COVID-19 pandemic do not prevent such safe travel. Counsel for Plaintiff shall immediately notify the Court when travel restrictions are no longer in place.  In the interim, until Plaintiff has so advised the Court, the parties shall provide joint status updates to the Court on or before the 3rd day of each month.

IT IS FURTHER ORDERED that during the period of time in which F.E.R.G.'s return to Guatemala is STAYED, he shall remain in this judicial district at the same residence as Defendant Rodas, as agreed to by the parties.  Defendant Rodas, anyone acting in concert with him, and any other person having actual knowledge of this Order are

restrained and enjoined from taking any action inconsistent with this Order or which interferes or impedes with the effectuation of the directions of this Order.

IT IS FINALLY ORDERED that within thirty days after F.E.R.G. is returned to Guatemala, Plaintiff Guerra Guerra may submit a motion for costs and fees, accompanied by the appropriate evidentiary support.  *See* 22 U.S.C. § 9007(b)(3)[14] and LCvR 54.2. Defendant Rodas may respond to any such motion within fourteen days.

IT IS SO ORDERED this 2nd day of June, 2020.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[14] Specifically, ICARA provides:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

*Id.*, 22 U.S.C. § 9007(b)(3).